IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

GEORGIANN E. SANDMON,                                                OPINION AND ORDER

                    Plaintiff,

                                                                                      19-cv-550-bbc

    v.

ANDREW M. SAUL,
Commissioner of Social Security,


                                     Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

       Plaintiff Georgiann E. Sandmon seeks review of a final decision by the Commissioner of Social Security denying her claim for disability insurance benefits and supplemental security income under the Social Security Act. 42 U.S.C. § 405(g). The administrative law judge hearing the claim concluded that plaintiff had the severe impairments of osteoarthritis, status post foot surgery, spinal stenosis, status post brain surgery, obesity, depression and anxiety, but could still perform work in the national economy. Plaintiff contends that this conclusion was erroneous and that the administrative law judge erred in a number of respects. After reviewing the briefs and the record, I conclude that substantial evidence supports the administrative law judge's conclusion that plaintiff is capable of performing light work with certain adjustments.

       The following facts are drawn from the administrative record (AR).

## BACKGROUND

Plaintiff was born in 1966 and was 50 on her alleged disability onset date, April 6, 2016. She filed both a Title II application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income on or about June 22, 2016. After these applications were denied, she requested and was granted a hearing before an administrative law judge on April 12, 2018.

Following the familiar five-step sequential evaluation of disability prescribed in 20 C.F.R. § 416.920, the administrative law judge found that plaintiff was not disabled. At step one, he found that plaintiff had not been engaged in substantial gainful activity since April 6, 2016, the alleged onset date of her disability, AR 92; at steps two and three, he found that plaintiff had the severe impairments of osteoarthritis, status post foot surgery, spinal stenosis, status post brain surgery, obesity, depression and anxiety and had not engaged in substantial gainful activity since her alleged onset date. Plaintiff alleged some additional conditions, including diverticulosis, hypertension, mild cataracts, gastroenteritis, hyperthyroidism and atherosclerosis of the abdominal aorta, but the administrative law judge found that these conditions were non-severe because they were resolved in less than 12 months with treatment, did not require any significant treatment or did not cause more than minimal limitations on plaintiff's ability to perform basic work functions.

Next, the administrative law judge concluded that none of plaintiff's impairments, whether physical or mental, medically equaled the severity of any listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1. Before considering step four, he determined that plaintiff had the residual functional capacity to perform light work, as defined in 20 C.F.R. §§

404.1567(b) and 416.976(b), except that she is unable to climb ladders, ropes or scaffolds; and she can occasionally stoop, crouch, kneel, crawl, climb ramps and stairs and reach overhead.  She has to be allowed to change positions between sitting and standing every 30 minutes for a few minutes, before returning to sitting or standing; she must avoid exposure to heights, hazards and moving machinery; and she is limited to unskilled work and to jobs having only occasional decision making and changes in work setting.

At steps four and five, the administrative law judge found that plaintiff could not perform any of her past jobs as a sales clerk or dietary aide.  He found it unnecessary to consider the transferability of job skills in determining disability, because "using the Medical Vocational Rules as a framework supports a finding that [plaintiff] is 'not disabled' whether or not she has transferable job skills."  AR 102.  He then asked the vocational expert whether jobs existed in the national economy for an individual of plaintiff's age, education, work experience and residual functional capacity.  The vocational expert testified that such an individual could perform several representative unskilled occupations classified as being at the light exertion level:  assembler, office helper, and inspector.  According to the expert, at least 17,800 people are employed in any one of these three occupations.  AR 102.

On August 8, 2018, the administrative law judge issued a decision unfavorable to plaintiff.  Plaintiff asked the Appeals Council to review the decision, but it denied the request on May 9, 2019.  She then filed this lawsuit under 42 U.S.C. § 405(g).

OPINION

Plaintiff contends that the administrative law judge erred in (1) assessing plaintiff's

residual functional capacity; (2) finding that plaintiff's rheumatoid arthritis is a non-determinable impairment; (3) relying on plaintiff's "purported lack of treatment"; and (4) relying on the opinions of a nurse practitioner.

In reviewing the administrative law judge's decision with respect to these arguments, I must determine whether the administrative law judge's decision is supported by substantial evidence, which means "sufficient evidence to support the agency's factual determinations." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019). The threshold for sufficiency is not high; the substantial evidence standard requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.

### A. Plaintiff's Residual Functional Capacity

Plaintiff believes that the administrative law judge did not fairly assess her condition or explain his reasoning for finding that she could perform work at the light level, but relied instead on statements that the court of appeals has criticized as "meaningless boilerplate." In particular, she objects to the following statement:

> The undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record.

Courts have criticized this and similar statements as unfocused and unhelpful. See, e.g., Murphy v. Colvin, 759 F.3d 811, 816 (7th Cir. 2014) (criticizing failure "to connect the conclusory statement with objective evidence in the record or explain what the ALJ relied on when making her determination"). However, use of this language is problematic only if

it is not fleshed out.  See, e.g., Pepper v. Colvin, 712 F.3d 351, 367 (2013) ("simple fact that ALJ used boilerplate language does not automatically undermine or discredit ALJ's ultimate conclusion if he otherwise points to information that justifies his credibility determination").

In this case, the administrative law judge used the so-called "meaningless boilerplate" paragraph, but did not rely on it.  He considered plaintiff's allegations of disabling symptoms and explained why they did not bear out her contention that she was unable to work at even the light level of exertion.  For example, he consideration her November 2017 surgery to remove a brain tumor, which was found to be benign, according to the medical records.  AR 97, citing AR 763.  Plaintiff testified at her administrative hearing that she had developed complications later that required her to have additional procedures, AR 34-35, but she produced no evidence from any medical provider that these procedures prevented her from working at a light level for an extended period of time.  As a result, it is unnecessary to consider plaintiff's brain surgery in evaluating her present ability to work.

Plaintiff has osteoarthritis, but the record shows that she has retained good function despite her symptoms.  When she was seen for a physical consultative examination by Thuy Nguyen, D.O., AR 451-55, the doctor noted that she had full range of motion in all joints, except in her right shoulder, for which she had not had any physical therapy or steroid injections.  Plaintiff told the doctor that she had foot pain resulting from deformities in her feet, and that it was helped by physical therapy and Diclofenac.  She had bilateral hip pain and low back pain and had not seen an orthopedic surgeon or a spine surgeon for these problems or had any spinal injections for either condition, although she had had physical therapy for her hip pain.  AR 451.  She had no difficulty with fine or gross motor dexterity,

id., and had normal gain and station, walked without a limp and did not need an assistive device. AR 452. Dr. Nguyen noted that plaintiff had allergies and anxiety, id., but he found no other problems except for her obesity, which he thought was a source of her back pain. AR 455.

Plaintiff complained of stenosis, but MRI readings taken by Dr. John Pietila showed only mild central spinal canal stenosis at D2-3, L3-S5, and L4-S," or "no significant stenosis." AR 808-09. She also had problems with her left foot and, in April 2016, she had a bunionectomy, a hammertoe infusion, a metatarsal osteotomy and arthoplasty. AR 399. She says that she was non-weight-bearing for a period of time after her surgery, but she has not said that the effects of the surgery lasted for more than a year afterwards. She also says that in the same month, an x-ray of her left foot showed osteoarthritis, AR 397, but the report from Dr. John Niemela, refers only to "mild" osteoarthrosis. Id. (Osteoarthrosis and osteoarthritis are often used interchangeably. Can. Fam. Physician, Vol. 30; July 1984).

The administrative law judge concluded from the medical reports that plaintiff had no physical problems that would prevent her from working at the level that he had assessed for plaintiff. It was consistent with the opinion of Nurse Practitioner Karen Swenor, FNP, who believed that plaintiff could lift up to 20 pounds continuously (more than two-thirds of the day), and up to 50 pounds frequently, carry up to 20 pounds, sit, stand or walk up for a total of eight hours, without interruption for two hours at a time and walk without interruption for two hours at a time and would not require a cane to walk. AR 769-74.

The administrative law judge also considered plaintiff's obesity, which he said was a severe impairment, but concluded that the evidence did not "support a finding that [it]

resulted in the severity of symptoms required to meet or equal a listing." AR 94.  He also reviewed the reports of state agency medical expert Edward Brophy, D.O., and agreed with most of his findings except his limitation of plaintiff to sedentary work, saying that this would have been appropriate while plaintiff was recovering from foot surgery, but that had ended in November 2017 at the latest.  AR 100.

In addition to reviewing plaintiff's physical impairments, the administrative law judge also reviewed plaintiff's mental impairments, including her claims of depression and anxiety. Plaintiff submitted evidence in support of these claims, but none of it showed that any of her claims met the criteria of a listing under either 12.04 or 12.06.  AR 94.  In March 2017, plaintiff reported problems with anxiety, insomnia, nervousness and sleep disruption. AR 730.  In June 2017, she said her depression had worsened.  AR 753.  However, her records show that by that time, she was "feeling well on Prozac."  Id.  The administrative law judge concluded that plaintiff had mild limitations in understanding, remembering or applying information and in interacting with others and had moderate limitations in concentrating, persisting and maintaining pace and in adapting or managing oneself.  AR 95.

For all of these reasons, the administrative law judge's residual functional capacity assessment was well-supported.

### B. Rheumatoid Arthritis and Purported Lack of Treatment

Plaintiff believes that she suffers from rheumatoid arthritis and says that she told the administrative law judge at her hearing that she had had testing for the disease and that it had showed that what she thought was arthritis was actually rheumatoid arthritis.  She also

said that she "had an appointment for that." AR 31. Neither she nor her counsel produced any documentation of the claim at plaintiff's hearing or offered to do so after the hearing. The administrative law judge found in his decision that plaintiff did not have a diagnosis of rheumatoid arthritis. AR 93.

"[A]lthough a claimant has the burden to prove disability, the ALJ has a duty to develop a full and complete record." Smith v. Apfel, 231 F.3d 433, 437 (7th Cir. 2000). However, this does not mean that an administrative law judge is obliged to develop evidence to support a claim mentioned for the first time at the administrative hearing, unsupported by any evidence or even the promise of evidence. This is far different from the situation in Apfel, which resulted in reversal because the administrative law judge discounted the plaintiff's functional limitations as laid out by his treating physician on the ground that the doctor had not ordered x-rays to confirm the diagnosis. More pertinent to this case is Summers v. Berryhill, 864 F.3d 523, 527 (7th Cir. 2017), in which the court held that the administrative law judge had no obligation to inquire further into plaintiff's testimony that she had "bad days"; "it was Summers's burden, not the ALJ's, to proved that she was disabled," and, because she "was represented by counsel at the hearing, she is presumed to have made her best case before the ALJ."

Plaintiff argues that it was an error of law for the administrative law judge to rely upon her purported lack of treatment after November 1, 2017 to determine that she did not actually suffer from rheumatoid arthritis, saying that it is impermissible to "draw any inferences about a claimant's condition from [a failure to treat] unless the ALJ has explored

the claimant's explanations as to the lack of medical care." Beardsley v. Colvin, 758 F.3d 834, 840 (7th Cir. 2014). In this instance, however, it was reasonable for the administrative law judge to assume that the issue of rheumatoid arthritis was not in dispute. Plaintiff had not introduced any evidence about the condition or even asked for an opportunity to submit evidence on the issue following the hearing. In these circumstances, it was not the administrative law judge's obligation to develop the record. Finally, as the government points out, even if plaintiff's doctors had confirmed that plaintiff had rheumatoid arthritis, that, by itself, would not have shown that plaintiff had functional limitations that would prevent her from performing work at any level.

### C. Opinions of Nurse Practitioner

Finally, plaintiff contends that it was error for the administrative law judge to rely on the opinions of Karen Swenor, a family nurse practitioner (FNP), to determine that plaintiff was not disabled under the Social Security Act. Plaintiff contends that nurse practitioner Swenor did not have the authority to make such a determination. In fact, when she set out her opinions, Social Security Ruling 06-03 was in effect and provided that an administrative law judge could reasonably give more weight to a "non-acceptable medical source," such as a nurse practitioner, than to a source such as a physician, if the nurse practitioner had "seen the individual more often than the treating (acceptable medical source)."

The administrative law judge had a number of reasons for finding that nurse practitioner Swenor's opinion was valid: she had a long relationship as a treatment provider

9

for plaintiff, having examined her and had become very familiar with her condition over a period of time. AR 100. In addition, her opinion aligned with the medical evidence showing that despite plaintiff's stenosis and degenerative disk disease, she was able to fully move all joints, other than her right shoulder, walked normally, walked on her heels and toes, squatted, had a negative straight leg raise and full muscle bulk and strength. AR 98, 100, 451-55, 645-46). It was also nurse practitioner Swenor's opinion that plaintiff could shop, travel without assistance, use public transportation, cook, drive and frequently climb stairs, ramps, ladders and scaffolds. AR 772-74. No other provider submitted an opinion to the contrary.

In summary, I find and conclude that plaintiff has failed to show that the administrative law judge erred in finding her not disabled.

### ORDER

IT IS ORDERED that the decision of defendant Andrew Saul, Commissioner of Social Security, denying plaintiff Georgiann E. Sandmon's appeal is AFFIRMED. The clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered this 15th day of April, 2020.

BY THE COURT:

/s/

_____

BARBARA B. CRABB
District Judge